UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

ALLEN P. BLY, TDOC #131085, )
    a/k/a ALLEN PRENTICE BLYE,[1] )
)
    Petitioner, )
)
v. ) No. 2:09-CV-162
) *Greer/Inman*
HOWARD CARLTON, Warden, )
)
    Respondent. )

## MEMORANDUM OPINION

Proceeding *pro se*, state prisoner Allen P. Bly ("petitioner" or "Bly") brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the constitutionality of his confinement under a 2001 Sullivan County, Tennessee Criminal Court judgment, convicting him of aggravated burglary and aggravated rape, [Doc. 2]. Respondent Warden has filed an answer, which is supported by copies of the state court record, [Docs. 17-18, Addenda I-II]. Under Rule 8 of the Section 2254 Rules, a habeas court is to determine whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. The Court finds it unnecessary to hold an evidentiary hearing in the present case and, thus, the petition is ripe for disposition.

---

[1] In his § 2254 application, petitioner's name is listed as "Allen P. Bly," but the state-court opinions and filings, as well as in the Supreme Court's order declining his petition for certiorari refers to petitioner as either "Allen Prentice Blye" or "Allen P. Blye." In this memorandum and the judgment to follow, the Court will refer to petitioner as "Bly," for consistency's sake.

To this end, the Warden submits, in his answer, that Bly is not entitled to relief from the state court decision rejecting the claim on its merits, given the deferential standards of review required for adjudicated claims in 28 U.S.C. § 2254. The Court agrees with the Warden and, for the following reasons, will **DENY** the petition and **DISMISS** this case.

## I. Procedural History

In mid-January of 2001, Bly was convicted of one count of aggravated rape and one count of aggravated burglary, receiving thereafter an effective fifty-five year sentence (forty years for the rape and fifteen years for the burglary, with the sentences set consecutively). There followed an unsuccessful motion for a new trial and a direct appeal. The Tennessee Court of Criminal Appeals affirmed the judgment, *State v. Blye*, No. E2001-01227-CCA-R3-CD, 2002 WL 31086314 (Tenn. Crim. App. Sept. 16, 2002), as did the Tennessee Supreme Court on the single issue Bly was permitted to raise. *State v. Blye*, 130 S.W.3d 776 (Tenn. 2004), *cert. den.*, 543 U.S. 845, 125 S.Ct. 289, 160 L.Ed.2d 74 (2004). Bly's subsequent petition for post-conviction relief was denied. *State v. Blye*, No. E2007-02091-CCA-R3-PC, 2008 WL 4974882 (Tenn. Crim. App. Nov. 24, 2008), *perm. app. den.*, (Tenn. 2009).

Bly now brings this instant habeas corpus petition, seeking release from his alleged unlawful confinement.

## II. Factual Background

The factual recitation is taken from the Tennessee Court of Criminal Appeal's opinion on direct review of Bly's convictions.

The victim in this case, R.C., testified that she was awakened from her sleep on the night of June 19, 1998, when she felt someone in bed with her.[2] The person put his hands around her neck, and R.C. noticed that he was wearing loose-fitting gloves. She asked the intruder, "[w]ho are you and what are you doing in my house?" The intruder's only response was to start choking R.C.

R.C. began fighting, and the choking increased. The two fell off of the bed and onto the floor, with R.C. on her stomach and the man on her back. The choking stopped and the victim pleaded with her attacker to leave. She reached back for his head, but it was covered with some kind of soft material. The man reached down and removed her panties, pulled his pants down, and raped her. Afterwards, he wrapped her in a comforter, put a pillowcase over her head, and dragged her into the bathroom. There, he ran hot water into the sink and tried to force R.C. to sit in the sink. When she struggled, he put her on the floor and rinsed her genital area with water from the sink. He then left the bathroom and R.C. escaped through the bathroom window.

R.C. ran to a neighbor's house, wearing only the tee-shirt she had been sleeping in, and called the police. After the police arrived, Officer David Samples accompanied R.C. back to her house. They entered through the side door, which was open. Inside, they found a pair of nylon jogging pants in the kitchen sink with water running over them. These pants were subsequently determined to have gasoline and kerosene on them. Officer Samples also noticed a bedroom lamp and table knocked over, bedding on the floor, and water running in the bathroom sink. R.C. also found many of her photographs in disarray, and later discovered that a sweater vest and a dress were missing; she testified that the covering over her attacker's head felt like her sweater vest.

R.C. went to the hospital, where a rape kit was performed, including vaginal swabs. Dr. Keith Byrd, the treating physician, testified that the victim had bruises on her neck, a large hematoma on her left buttock, and abrasions on her left flank. The police collected the tee-shirt and panties R.C. had been wearing during the attack. R.C. was unable to identify her attacker or describe him, but she estimated that he was five feet, ten inches to six feet tall. She also smelled the odor of gasoline or kerosene about him.

Detective David Joe Cole of the Kingsport Police Department testified that he spoke with the Defendant on July 12, 1998. The Defendant informed Det. Cole that he was in the lawn care business. Det. Cole testified that the Defendant is five feet, ten

---

[2] The state court referred to the victim by her initials in view of the nature of the crime committed against her. This Court will do the same thing.

inches tall. Det. Cole also testified that, in February 2000, he met with Deborah McDowell at the Tennessee Women's Prison, where she turned over to him a letter and envelope. The envelope had the Defendant's address on it, with which Det. Cole was familiar. Det. Cole also recognized the Defendant's signature on the bottom of the letter contained in the envelope. Det. Cole turned the envelope over to the TBI laboratory. Det. Cole testified that he was present when blood was subsequently drawn from the Defendant, which was also turned over to the TBI lab.

Officer Timothy Horne testified that he came into contact with the Defendant on August 9, 1998, and noticed the smell of gasoline about the Defendant.

Dr. Michael Alexander Turbeville testified as an expert witness in serology and DNA. As a forensic scientist with the TBI lab, Dr. Turbeville examined and analyzed the rape kit and tee-shirt recovered from the victim, as well as the envelope recovered from Ms. McDowell and the blood drawn from the Defendant. Dr. Turbeville testified that he found sperm present in the vaginal swabs taken from R.C. and on the tee-shirt she had been wearing during the attack, and was able to obtain a DNA profile from these deposits. He was also able to obtain a DNA profile from saliva recovered from the envelope. All of these DNA profiles were consistent with one another, and all of them matched the DNA profile obtained from the Defendant's blood. Dr. Turbeville testified that the chance of the Defendant's blood being a random match to the other samples was one in a number greater than the population of the earth.

*Blye*, 2002 WL 31086314, at *1-*2.

### III. Standards of Review

Under the review standards set forth in 28 U.S.C. § 2254(d), a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

4

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies that principle to the particular facts of the case. *Id.*, at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.*, at 411.

Findings of fact which are sustained by the record are entitled to a presumption of correctness, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In this case, the state supreme court emphasized that the facts were not in dispute and that the issue was purely a question of law. *Bates*, 130 S.W.3d at 779.

### IV. Discussion

The single ground offered for relief in petitioner's habeas corpus application is quoted verbatim: "The trial court erred when it failed to suppress the evidence derived from the seizure of Bly's blood based on the unconstitutional, ex parte search warrant after his right to assistance of counsel had attached, i.e., the state violated the petitioner's rights pursuant to the 4th, 6th and 14th Amendments," [Doc. 2, Pet. at 5-6].

5

## A. Putative Fourth Amendment Claim

While Bly has mentioned, almost in passing, that he is raising a Fourth Amendment challenge to the trial court's admission of the blood sample results, he has not presented any factual development to bolster such a claim. A claim which lacks any factual support is conclusory, and it is well settled that conclusory claims fail to state a claim for relief under § 2254. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (observing that bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation).

However, if the claim were not conclusory and if it truly has been pled, it is precluded by the doctrine enunciated in *Stone v. Powell*, 428 U.S. 465 (1976). There, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*, at 494. In other words, a habeas petitioner may not seek to raise issues challenging the legality of a search and seizure, if he had a full and fair opportunity to raise the claims in state court and if the presentation of the claims was not frustrated by any failure of the state's corrective processes. *Id.*, at 494-95.

A review of the record makes it clear that petitioner had the opportunity to fully and fairly litigate his Fourth Amendment claims in the Tennessee courts. Counsel moved, in the trial court, to suppress the blood test results, an evidentiary hearing was held, and the motion was denied. *Bates*, 2002 WL 31086314, *3. This issue then was raised on direct appeal in the Tennessee Court of Criminal Appeals, and that court extensively analyzed the claim under Fourth Amendment jurisprudence. *Id.*, at *2-*6. Therefore, because Bly had a full and fair opportunity to litigate his claim in the state courts, the claim is not reviewable in this federal habeas corpus proceeding.

**B. Sixth Amendment/SearchWarrant Claim**

A little background will help place this claim in context.

Following the appointment of an attorney, the State moved for a search warrant in the Sullivan County Criminal Court to obtain Bly's blood sample for the purpose of performing DNA (deoxyribonucleic acid) testing. An evidentiary hearing was held, and the trial court, finding no probable cause, denied the search warrant. The State supplemented its earlier motion with additional evidence, which it argued now would establish probable cause.

After the case was assigned to Sullivan County Criminal Court Judge R. Jerry Beck, but before the supplemental motion was ruled on, a police investigator sought a search warrant from Judge Lynn Brown, who had jurisdiction in Johnson County, Tennessee, the location of the state prison wherein Bly was incarcerated. In the affidavit offered in support of the search warrant, the officer related, in part, that he had probable cause to believe that Bly had sent a letter to an individual, that the saliva recovered from the envelope belonged to Bly, and that Bly's blood sample, if allowed, would match, by DNA, the seminal fluid left by the rapist in R.C.'s case. Judge Brown issued a search warrant authorizing a blood sample extraction from Bly.

The investigator went to the state prison to obtain the blood sample, but Bly refused to have his blood drawn. The investigator returned to Judge Brown, who authorized Bly's blood to be drawn "by whatever means may be necessary or by any necessary restraint." The investigator revisited Bly at the state prison and informed him that the judge had authorized his blood to be drawn by force, if necessary. Bly then agreed to the blood draw, but only after he had signed a handwritten document indicating that he was submitting to the extraction of his blood "under

7

duress." Prison medical personnel then drew the blood, and a subsequent analysis of the blood sample resulted in a match between Bly's DNA and the DNA in the seminal fluid recovered from the victim and from the tee shirt she had been wearing when she was raped.

Thereafter, Bly moved to suppress the DNA evidence obtained pursuant to the search warrant issued by Judge Brown, arguing that the ex parte procedure used to obtain the search warrant violated his Sixth Amendment right to counsel. The motion was denied, the DNA evidence was introduced at trial, and Bly was convicted.

1. *Governing Law*

After "the adversary judicial process has been initiated," a defendant has a Sixth Amendment right to counsel to assist him " at all 'critical' stages of the criminal proceedings . . . because of the effect it has on the ability of the accused to receive a fair trial." *Ayers v. Hudson*, 623 F.3d 301, 308-309 (6th Cir. 2010) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079, 2085, 173 L.Ed.2d 955 (2009) and *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002)). A "critical stage" is one where there is a reasonable likelihood that counsel's absence will result in substantial prejudice to the defense, meaning that "an opportunity may be irretrieveably lost, or material may come out that may be incurably damaging," *Van v. Jones*, 475 F.3d 292, 313-15 (6th Cir. 2007), or that the results "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224 (1967). A "critical stage," such as "arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea," *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012), presents "grave potential for prejudice, . . . which may not be capable of reconstruction at trial, and . . . counsel['s presence] itself can often avert

8

prejudice and assure a meaningful confrontation at trial." *Wade*, 388 U.S. at 236. However, "scientific analyzing of the accused's . . .blood sample" is not a critical stage "since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." *Id.*, at 227-28.

2. *Analysis*

On direct appeal, the Tennessee Supreme Court entertained this very issue. The highest state court cited extensively to *Wade* and to other Supreme Court cases, such as *Kirby v. Illinois*, 406 U.S. 682 (1972), and *United States v. Ash*, 413 U.S. 300 (1973), which discuss the right to counsel during "critical stages" in criminal proceedings. Therefore, its opinion is not contrary to well-settled Supreme Court precedent on the Sixth Amendment's guarantee of counsel at certain pretrial and trial stages of the judicial criminal process.

Nor did the state court unreasonably apply the precedent when it determined that Bly's Sixth Amendment right to counsel had not been violated because the extraction of a blood sample for DNA testing is not a critical stage of the criminal proceedings which required counsel's presence when the search warrant was procured. In making this determination, the state supreme court, quoting *Ash*, 413 U.S. at 309, explained that an event which occurs at the pre-trial stage is not critical when "confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation.'" *Bates*, 130 S.W.2d at 781. The state supreme court reasoned that "an ex parte search warrant proceeding does not diminish [petitioner's] right to a fair trial" since he could and did seek to suppress the DNA results obtained through a motion under the state rules of evidence. *Id*. The highest state court further reasoned that permitting counsel to participate in the search warrant

9

process would destroy the prerequisites to an effective process for issuance of search warrants by eliminating the secrecy and confidentiality the State relies on to elicit the testimony from affiants and witnesses to meet its probable cause obligations.

As noted earlier, the U.S. Supreme Court has distinguished a line-up identification, which it has characterized as a critical stage, "from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like," which are not critical steps. *Wade*, 388 U.S. at 228. As to the latter "preparatory steps," it explained that

> [k]nowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

*Wade*, 388 U.S. at 228.

Here, petitioner challenged the DNA sample by filing a pre-trial motion to suppress the DNA results and he was not precluded from calling his own expert, presenting his own DNA tests, if, of course, he could secure results contrary to the results of the prior DNA test, and cross- examining of the state's expert. *See McNeal v. Adams*, 623 F.3d 1283, 1288 (9th Cir. 2010), *cert. den.*, 131 S. Ct. 3066 (2011) (holding that the collection of DNA samples is "subject to meaningful challenge through the adversary process" and thus is not a "critical stage" of the proceedings). Thus, all these avenues were open to petitioner to oppose the DNA sample taken pursuant to the search warrant, thereby

10

minimizing any risk that the absence of counsel from the search warrant process would undermine his right to a fair trial.

Petitioner has not pointed to any Supreme Court case to show that the adjudication of this claim was an unreasonable application of federal law as established in Supreme Court cases. Indeed, the Court has found no case which holds that the issuance of a search warrant for the collection of a DNA sample is a critical stage of a criminal judicial proceeding so as to mandate counsel's assistance. *See e.g., United States v. Thompson*, 2011 WL 5196652, at *1-*2 (W.D. Tenn. 2011) ("The taking of a DNA sample is not a critical stage which requires the presence of the defendant's attorney.") *McNeal*, 623 F.3d at 1289 (hearing on motion to compel DNA sample not a critical stage of criminal proceedings); *United States v. Lewis*, 483 F.3d 871, 874 (8th Cir. 2007) (finding that a DNA extraction did not violate the defendants's Sixth Amendment right to counsel because it was not a "critical stage" of the proceedings); and *United States v. Hubbard*, 2007 WL 133355, at *4 (D. Kan. Jan. 16, 2007) (refusing to suppress defendant's DNA sample taken without notifying counsel or allowing him to present because the event was not a critical stage of the proceedings).

For these reasons, petitioner is not entitled to issuance of the writ.

## V. Conclusion

For the above reasons, this *pro se* state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

11

## VI. Certificate of Appealability

One final matter remains for discussion: whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. See 28 U.S.C. § 2253(c)(1). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that petitioner's claim was adjudicated in state court and would not support habeas corpus relief because, after an examination of the state court's decision, the record, and the relevant governing law in Supreme Court cases, the decision did not run contrary to well established federal law and did not reflect that the state courts had unreasonably applied that law.

The Court now finds that reasonable jurists could not disagree with the resolution of this claim and could not conclude that it is "adequate to deserve encouragement to proceed further," given that no case of which the Court is aware has found has resolved it differently. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a COA shall not issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE